**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| CONIFER HEALTH SOLUTIONS, LLC; AND CONIFER REVENUE CYCLE SOLUTIONS, LLC | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. |
| V. | § § | |
| QBE SPECIALTY INSURANCE COMPANY | § § § § | |
| Defendant. | § § § | |

## ORIGINAL COMPLAINT

Plaintiffs Conifer Health Solutions, LLC and Conifer Revenue Cycle Solutions, LLC (collectively "Conifer" or "Plaintiffs") hereby file this Original Complaint against Defendant QBE Specialty Insurance Company ("QBE" or "Defendant") and would respectfully show the Court as follows:

### I.   PARTIES

1. Plaintiff Conifer Health Solutions, LLC ("CHS") is a Delaware limited liability company with its principal place of business in Frisco, Texas.

2. Plaintiff Conifer Revenue Cycle Solutions, LLC ("CRCS") is a California limited liability company with its principal place of business in Frisco, Texas.

3. None of the members of Conifer Health Solutions, LLC or Conifer Revenue Cycle Solutions, LLC is a citizen of North Dakota or New York.

4. Defendant QBE Specialty Insurance Company is a North Dakota surplus lines insurance company with its principal place of business in New York City, New York. QBE is

engaged in the business of insurance in the state of Texas and can be served through the Texas Commissioner of Insurance, 333 Guadalupe, Austin, Texas 78701, with instructions to serve CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

## II. JURISDICTION & VENUE

5. The foregoing allegations are incorporated herein by reference.

6. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because (1) Defendant is not a citizen of any state of which Plaintiffs are also citizens; and (2) the amount in controversy exceeds $75,000, excluding interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims recited herein occurred in Frisco, Texas.

## III. FACTUAL BACKGROUND

**The QBE Policy**

8. The foregoing allegations are incorporated herein by reference.

9. Conifer provides health management services for hospitals, health systems, physician groups, and employers.

10. QBE is a surplus lines insurer doing business in the State of Texas.

11. QBE issued Errors and Omissions Policy No. QPL0097524 ("the Policy") to Conifer Health Solutions, LLC for the period from July 1, 2016 through July 1, 2017.

12. The Policy insures Conifer Health Solutions, LLC and its subsidiaries.

13. Conifer Revenue Cycle Solutions, LLC is a wholly-owned subsidiary of Conifer Health Solutions, LLC.

14. Among other things, the Policy states that QBE has "the right and duty to defend any Claim, unless otherwise specifically stated in a particular Liability Coverage Part."

15. The Policy's Insuring Clause for the E&O Coverage Part does not limit QBE's duty to defend Claims but rather promises that QBE "shall pay, on behalf of an Insured, Loss on account of a Claim first made during the Policy Period."

16. QBE's duty to defend under the Policy exists "even if any of the allegations in such Claim are groundless, false or fraudulent."

17. Moreover, the Policy also states that "[i]f in any Claim, the Insureds who are afforded coverage for a Claim incur Loss that is covered by this Policy and loss that is not covered by this Policy because such Claim includes both covered and uncovered matters, 100% of Defense Costs incurred by such Insured shall be covered Loss."

18. A "Claim" under the Policy's E&O Coverage Part includes, among other things, any "written demand for monetary or non-monetary (including injunctive) relief, including a demand for arbitration, mediation or waiving or tolling of a statute of limitations."

19. The Policy defines "Related Claims" to mean "all Clams based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or Wrongful Acts."

20. Under the Policy, "All Related Claims shall be deemed a single Claim first made during the policy period in which the earliest of such Related Claims was either first made or deemed to have been first made in accordance with Section V. REPORTING above."

21. The E&O Liability Coverage Part, Section II, K. provides, in relevant part, as follows:

> [N]o coverage shall be provided under this Coverage Part, for Loss on account of that portion of a Claim . . . based upon, arising out of or resulting from any

Wrongful Act committed prior to the First Inception Date if, on or before such date, any Insured knew or could reasonably have foreseen that such Wrongful Act would result in a Claim (the "Prior Knowledge Exclusion").

22. By its terms, the Prior Knowledge Exclusion does not apply to Loss on account of that portion of a Claim based upon, arising out of or resulting from a Wrongful Act committed prior to the "First Inception Date" if, on or before such date [April 29, 2015] no Insured knew or could reasonably have foreseen that such Wrongful Act would result in a Claim.

**Reid's 2016 Correspondence**

23. On August 25, 2016, Reid Hospital and Health Care Services, Inc. ("Reid") issued a letter to CHS threatening litigation and proposing mediation or tolling of limitations for various claims Reid asserted against CHS relating to revenue cycle management services allegedly performed by CHS for Reid.

24. The August 2016 Letter alleged that CHS breached the terms of a Master Agreement for Revenue Cycle Outsourcing between Reid and Dell Marketing, L.P. (the "MSA"), including a warranty to provide services consistent with so-called "best industry practices."

25. The August 2016 Letter alleged that Conifer engaged in willful misconduct and gross negligence in connection with the performance services under the MSA. Specifically, Reid asserted, *inter alia*, that "[i]n addition to Conifer's conscious decision to not properly staff the Reid team, Conifer chose to also reduce the role of third parties such as Claim Aid, who had long provided front end revenue cycle services first as a contractor to Reid and then a contractor to Dell."

26. Reid also asserted in the August 2016 Letter that "Conifer caused Reid to pay incentive fees that were never earned."

27. On November 15, 2016, Reid issued a settlement demand to CHS (the "November 2016 Letter").

28. Reid's November 2016 Letter alleged that CHS was both willful and grossly negligent in the way it chose to understaff the revenue cycle management services provided to Reid.

29. The November 2016 Letter, among other things, also repeated Reid's prior assertion that "[i]n addition to Conifer's conscious decision to not properly staff the Reid project, Conifer chose to also reduce the role of third parties such as Claim Aid, who had long provided front end revenue cycle services, first as a contractor to Reid and then as a contractor to Dell."

**QBE's Response to the August 2016 and November 2016 Letters**

30. Conifer provided timely notice to QBE of the August 2016 Letter under the Policy on or about August 31, 2016.

31. Subsequently, QBE also received a copy of Reid's November 2016 Letter (together with the August 2016 Letter, the "2016 Claim").

32. In December 2016, QBE denied coverage under the Policy on the alleged basis that the Prior Knowledge Exclusion precluded coverage for the 2016 Claim.

33. QBE subsequently asserted as an additional basis for denying coverage that, among other things, the 2016 Claim was not "first made" during the period of the Policy.

34. QBE has also since averred that the application for the Policy contains terms incorporated by reference into the Policy, which exclude coverage for the 2016 Claim, including the following:

- Is the Applicant aware of any actual or alleged fact, circumstance, situation, error or omission, or issue which might give rise to a claim against under [sic] the insurance sought?

- It is agreed that with respect to questions 1-6 above, that if such claim, proceeding, action, knowledge, information or involvement exists, then such claim, proceeding or action and any claim or action arising from such claim, proceeding, action, knowledge, information or involvement is excluded from the proposed coverage.

- NO FACT, CIRCUMSTANCE OR SITUATION INDICATING THE PROBABILITY OF A CLAIM OR ACTION FOR WHICH COVERAGE MAY BE AFFORDED BY THE PROPOSED INSURANCE IS NOW KNOWN BY AN PERSON(S) OR ENTITY(IES) PROPOSED FOR THIS INSURANCE OTHER THAN THAT WHICH IS DISCLOSED IN THIS APPLICATION. IT IS AGREED BY ALL CONCERNED THAT IF THERE BE KNOWLEDGE OF ANY SUCH FACT, CIRCUMSTANCE OR SITUATION, ANY CLAIM SUBSEQUENTLY EMANATING THEREFROM SHALL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE.

35. Contrary to QBE's denial of coverage for the 2016 Claim, Reid's August 2016 and November 2016 Letters do not contain any allegations of any "Claim" or "Related Claim," as defined in the Policy, being made prior to the inception of the Policy on July 1, 2016.

36. Contrary to QBE's refusal to acknowledge coverage under the Policy for the 2016 Claim, Reid's August 2016 and November 2016 Letters do not assert for every "Wrongful Act" alleged against CHS, that, on or prior to April 29, 2015, any Insured knew or could reasonably have foreseen that such Wrongful Act could result in a Claim.

37. Contrary to QBE's wrongful failure to acknowledge coverage for the 2016 Claim, Reid's August 2016 and November 2016 Letters do not allege facts triggering the "exclusions" allegedly contained in the Policy's application upon which QBE relies for its denial of coverage. Nor do such terms otherwise preclude coverage for the 2016 Claim under the Policy.

**The Reid Lawsuit**

38. On May 4, 2017, Reid filed a Complaint in the Southern District of Indiana against CHS (the "Reid Lawsuit").

39.     The Reid Lawsuit alleges that CHS "willfully and grossly negligently understaffed the Reid project."

40.     The Reid Lawsuit also includes other allegations of Wrongful Act against CHS, independent of the alleged understaffing of the Reid Lawsuit, as evidenced, without limitation, by the following:

- "Upon Conifer's departure, Reid immediately noticed that the coding of medical records had been mismanaged as the result of understaffing and inadequate training." Reid Lawsuit, at ¶ 104.

- "When Conifer exited Reid, the master patient index and physician master index systems had printed out thousands of error notices." *Id*. at ¶ 105.

- "Instead of correcting the errors, the manager of HIM, Conifer's Roscoe Myrmingos, simply asked that the error report function be disabled." *Id*. at ¶ 106.

- ". . . [W]hen Reid terminated Conifer, there were shelves and shelves of these error reports that Conifer's employees had never bothered to review or correct." *Id*. at ¶ 109.

- "Conifer did not even initiate a claims denial management program at Reid to address this exceptionally high denial rate." *Id*. at ¶ 117.

- "Conifer's staff on the Reid project regularly failed to respond to these routine requests for information resulting in denials of claims." *Id*. at ¶ 118.

- "After missing those deadlines Conifer frequently ignored the appeals deadlines and permitted them to expire." *Id*. at ¶ 119.

- "Conifer's failure to timely bill, timely follow up and timely appeal caused Reid to write off $21,447,037." *Id.* at ¶ 121.

- "$20,480,441 of the write-off described in the paragraph above would have been collected had Conifer used Best Industry Practices." *Id.* at ¶ 122.

- "Despite Conifer's willful misconduct, recklessness and gross negligence, it still overstated the collection rate it reported to Reid for purposes of calculating its Incentive Fees from January, 2013, to September 2013." *Id.* at ¶ 145.

- ". . . Reid paid Conifer certain payments for meeting the Master Agreement's incentive benchmarks." *Id.* at ¶ 174.

- ". . . [T]he Incentive Fees were miscalculated by Conifer." *Id.* at ¶ 175.

- ". . . Conifer intentionally failed to implement a claim denial management program at Reid as required by the Master Agreement." *Id.* at ¶ 186.

41. On May 24, 2017, Reid filed an amended complaint in the Reid Lawsuit to substitute CRCS for CHS as defendant. The substance of Reid's allegations, including those recited above, remains the same.

**QBE's Denial of Coverage for the Reid Lawsuit**

42. Conifer provided QBE with timely notice of the Reid Lawsuit under the Policy.

43. QBE has since denied coverage for the Reid Lawsuit under the Policy, asserting, among other things, that (1) the Reid Lawsuit was not a "Claim" first made during the Policy's period; and (2) the Policy's Prior Knowledge Exclusion precludes coverage for the Reid Lawsuit.

44. In denying coverage for the Reid Lawsuit, QBE also purports to rely on the terms of the application cited in paragraph 34 *supra* to refuse coverage for the Reid Lawsuit.

45. Contrary to QBE's refusal to accept coverage for the Reid Lawsuit, no part of the Reid Lawsuit alleges any "Claim" or "Related Claim," as those terms are defined in the Policy, first made prior to the inception of the Policy on July 1, 2016.

46. Notwithstanding QBE's denial of coverage, the Reid Lawsuit alleges numerous "Wrongful Acts" for which there are no allegations by Reid that, prior to April 29, 2015, any Insured knew or could reasonably have foreseen that such Wrongful Act could result in a Claim.

47. The allegations of the Reid Lawsuit contradict and do not support QBE's reliance on any alleged exclusions in the Policy's application to deny coverage for the Reid Lawsuit.

48. It is anticipated that Conifer will spend in excess of $75,000 more than the Policy's applicable retention to defend itself against the Reid Lawsuit.

### IV.     CAUSE OF ACTION

**A.     Declaratory Judgment**

49. The foregoing allegations are incorporated herein by reference.

50. An actual, justiciable controversy exists between Conifer and QBE regarding QBE's duty to defend Conifer under the Policy in connection with the 2016 Claim.

51. An actual, justiciable controversy exists between Conifer and QBE regarding QBE's duty to defend Conifer under the Policy in connection with the Reid Lawsuit.

52. Pursuant to 28 U.S.C. § 2201, Conifer seeks a declaration that (1) QBE has a duty to defend the 2016 Claim under the Policy; and (2) QBE has a duty to defend Conifer in connection with the Reid Lawsuit under the Policy.

## V. PRAYER

WHEREFORE, Conifer respectfully requests that this Court grant it the following relief:

a. A declaratory judgment that that (1) QBE has a duty to defend the 2016 Claim under the Policy; and (2) QBE has a duty to defend Conifer in connection with the Reid Lawsuit under the Policy;

b. Judgment awarding Plaintiffs all costs of court; and

c. Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/ *Micah E. Skidmore*
Micah E. Skidmore
State Bar No. 24046856
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940
micah.skidmore@haynesboone.com

ATTORNEY FOR PLAINTIFFS CONIFER HEALTH SOLUTIONS, LLC AND CONIFER REVENUE CYCLE SOLUTIONS, LLC