# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CONIFER HEALTH SOLUTIONS, LLC, CONIFER REVENUE CYCLE SOLUTIONS, LLC, | § § § § § § § § § | Civil Action No. 4:17-CV-00664 Judge Mazzant |
| v. | | |
| QBE SPECIALTY INSURANCE COMPANY. | | |

## MEMORANDUM OPINION AND ORDER

The present action is an insurance coverage dispute over Defendant's duty to defend claims against Plaintiffs. The Court will consider the parties' arguments as set forth in Plaintiffs' Motion for Summary Judgment (Dk. #10), Defendant's Motion for Summary Judgment (Dkt. #11), Defendant's Supplemental Motion for Summary Judgment (Dkt. #16), and Plaintiffs' Motion to Strike Exhibit C to Defendant's Motion for Summary Judgment (Dkt. #17). Having examined the motions, the parties' briefings, and the relevant pleadings, the Court finds that the insurance policy's Contract Exclusion bars coverage of all claims. Accordingly, the Court finds that Plaintiffs' motion for summary judgment should be denied, Defendant's motion for summary judgment should be granted, Defendant's supplemental motion for summary judgment should be granted, and Plaintiffs' motion to strike should be denied moot.

## BACKGROUND

Plaintiff Conifer Health Solutions, LLC and its subsidiary, Plaintiff Conifer Revenue Cycles Solution, LLC (collectively "Conifer"), provide health management services to hospitals, health systems, and physician groups. On August 15, 2016, Reid Hospital & Health Care Services, Inc. ("Reid") sent Conifer a correspondence (the "August 2016 Letter") alleging breach of

contract, breach of warranty, willful misconduct, and fraud relating to revenue cycle services that Conifer provided the hospital between November 2012 and September 2014. (Dkt. #10, Ex. 4). The August 2016 Letter threatened litigation unless Reid and Conifer entered into a tolling agreement or mediated their dispute.

On November 15, 2016, Reid sent Conifer a second correspondence (the "Novermber 2016 Letter") that alleged:

> On April 28, 2011, Reid outsourced its entire revenue cycle management to Dell Marketing, LP ("Dell") pursuant to a 77-page Master Agreement for Revenue Cycle Outsourcing ("The Agreement"). On November 5, 2012, Conifer Health Solutions ("Conifer") assumed all of Dell's duties and obligations under The Agreement. Therefore, starting in November, 2012, Conifer was responsible for Reid's entire revenue cycle. These responsibilities included prequalifying patients, case management services, coding, medical records, timely billing for Reid's services, timely responding to requests for additional information from third party payors (i.e. insurers, Medicaid and Medicare), timely appealing and pursuing denials, and ultimately collecting all sums due Reid for its services.
> . . . .
> . . . Conifer chose to understaff its personnel at Reid, causing $35,606,730 in damages to Reid. . . . Conifer's decision to understaff the Reid project was motivated by Conifer's desire to cut costs due to its inability to tum a profit on the Reid project. Conifer's conduct constitutes willful misconduct and Gross Negligence, sufficient to render the damages limitations described in Section 14.1 of The Agreement inapplicable.

(Dkt. #10, Ex. 5 at pp. 2, 19). The November 2016 Letter demanded $30,000,000 to settle Reid's claims.

On May 4, 2017, Reid brought action against Conifer in the United States District Court for the Southern District of Indiana asserting causes of action for breach of contract, breach of express warranty, unjust enrichment, and gross negligence/willful and wanton misconduct. (Dkt. #10, Ex. 1-D). On May 24, 2017, Reid amended its complaint to add Conifer (parent company) to the suit and realleged the earlier factual allegations. (Dkt. #10, Ex. 1-D). On September 13, 2017, Reid filed a second amended complaint, once more restating the factual

2

allegations of the preceding complaints but omitting all causes of action except for breach of contract (the original, first amended, and second amended complaints are collectively referred to as the "Underlying Reid Lawsuit"). (Dkt. #16, Ex. 3).

Defendant QBE Specialty Insurance Company ("QBE") is a surplus lines insurer. QBE issued Commercial Lines Policy No. QPL0097524 (the "Policy") to Conifer, which was made effective for claims made between July 1, 2016, and July 1, 2017 (the "Policy Period"). The Policy's General Terms and Conditions provided that "the Insurer shall have the right and duty to defend any Claim, unless otherwise specifically stated in a particular Liability Coverage Part . . . even if any of the allegations in such Claim are groundless, false or fraudulent." (Dkt. #10, Ex. 3 at p. 6). Conifer submitted the claims in the August 2016 Letter, November 2016 Letter, and Underlying Reid Lawsuit (collectively the "Submitted Matters"). QBE acknowledged that Conifer's subsidiary was covered as an Insured under the Policy but argued that multiple Policy exclusions barred its duty to defend the Submitted Matters. Relevant portions of the Policy provide:

> General Terms and Conditions
> . . . .
> **VII. ALLOCATION**
> If in any **Claim**, the **Insureds** who are afforded coverage for a **Claim** incur **Loss** that is covered by this Policy and loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters, 100% of **Defense Costs** incurred by such **Insured** shall be covered **Loss**, and all loss other than **Defense Costs** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.
> **VIII. TREATMENT OF RELATED CLAIMS**
> All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either first made or deemed to have been first made in accordance with Section V. REPORTING above.
> . . . .
> **XXII. GLOSSARY**
> . . . .

O. **Related Claims** means all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts**.

. . . .

**The Solution for Error and Omissions Liability**
**Coverage Part Declarations**

. . . .

I. **INSURING CLAUSE**
The **Insurer** shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made during the **Policy Period**.

II. **EXCLUSIONS**
In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

. . . .

B. Contract - for any liability in connection with any contract, agreement, warranty or guarantee to which an **Insured** is a party, provided that this Exclusion B shall not apply to **Loss** to the extent that such **Insured** would have been liable for such **Loss** in the absence of such contract, agreement, warranty or guarantee

. . . .

V. **GLOSSARY**

. . . .

B. **Claim** means any:
1. written demand for monetary or non-monetary (including injunctive) relief, including a demand for arbitration, mediation or waiving or tolling of a statute of limitations; and
2. civil proceeding, evidenced by the service of a complaint or similar pleading;

against an **Insured** for a **Wrongful Act**, including any appeal therefrom. The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured**.

. . . .

K. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including: . . .
    4. **Defense Costs**;

. . . .

**The Solution for Errors and Omissions –**
**Miscellaneous Professional Services**
**Coverage Sub-Part**

. . . .

I. **GLOSSARY**

. . . .

> B.  **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted by an **Insured**, or by any other person or entity for which the **Insured** is legally liable, in the performance of or failure to perform **Miscellaneous Professional Services** on or after the **Retroactive Date** and prior to the end of the **Policy Period**.

(Dkt. #10, Ex. 3 at pp. 6–16)

QBE contends that (1) the Submitted Matters relate to claims that Reid first made before the Policy's inception period in a correspondence dated September 2013 (the "September 2013 Letter") (the "Related Claims Exclusion"); (2) the Submitted Matters arise out of a contract—the Master Agreement (the "Contract Exclusion"); and (3) Conifer knew or should have known about Reid's claims prior to executing the application for the Policy (the "Prior Knowledge Exclusion").

On September 19, 2017, Conifer filed an Original Complaint (Dkt. #1) in the United States District Court for the Eastern District of Texas for a declaratory judgment that QBE has a duty to defend the claims asserted in the August 2016 Letter, November 2016 Letter, and Reid's original complaint and amended complaints. On February 9, 2018, Conifer filed a motion for summary judgment (Dkt. #10), and QBE filed its motion for summary judgment (Dkt. #11). QBE alleges that on March 9, 2018, it became aware of Reid's second amended complaint and filed a supplemental motion for summary judgment (Dkt. #16) requesting that the Court consider Reid's latest pleading under the same arguments of preclusion. On March 23, 2018, Conifer filed its First Amended Complaint (Dkt. #24) also addressing Reid's live pleading.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id*. The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss

a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

**Cross-Motions for Summary Judgment**

Conifer moves for the Court to declare that QBE has a duty to defend the claims asserted in the August 2016 Letter, November 2016 Letter, and Underlying Reid Lawsuit. QBE responds with a cross-motion for summary judgment arguing that it has no duty to defend the Submitted Matters because: (1) the Policy's Contract Exclusion precludes coverage; (2) the Policy's Prior Knowledge Exclusion precludes coverage; (3) the Policy's Related Claims provision deems the Submitted Matters not "first made" in the Policy Period; and (4) the fortuity doctrine bars coverage.

The parties do not dispute that the Submitted Matters are claims under the Policy and have applied across-the-board arguments to each of the matters. The Court finds that the Submitted Matters[1] all contain that same factual allegations and will consider them together. Because the

---

[1] Conifer briefs the Submitted Matters as five separate claims. Conifer contends that the complaints, though separate claims, are deemed to be one single related claim and request that the Court declare that QBE has a duty to defend September 2016 Letter, November 2016 Letter, and Underlying Reid Lawsuit as independent and distinct claims. QBE also presents Reid's second amended complaint and the Underlying Reid Lawsuit as distinct from each other. The parties concede that the iterations of Reid's complaint contain the same factual allegations. The Court notes that, notwithstanding the parties' classifications, the Submitted Matters are likely one claim. The Policy defines a "Claim" as a "written demand for monetary or non-monetary (including injunctive) relief, including a demand for arbitration, mediation or waiving or tolling of a statute of limitations; and . . . [a] civil proceeding, evidenced by the service of a complaint or similar pleading; against an Insured for a Wrongful Act, including any appeal therefrom." (Dkt. #10, Ex. 3 at pp. 14). The Policy also deems all Related Claims "a single Claim first made during the policy period in which the earliest of such Related Claims was either first made," and claims are related if they are "based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or Wrongful Acts." (Dkt. #10, Ex. 1-A at pp. 8, 11). The Submitted Matters all arise from Conifer's alleged failure to perform under the Master Agreement. The August 2016 Letter was a demand to toll or mediate the dispute; the November 2016 Letter was a letter offering to settle the dispute; and the Underlying Reid Lawsuit was the natural litigation that ensued. The

Court concludes that the Contract Exclusion bars coverage of the Submitted Matters, it chooses not to address QBE's arguments based the fortuity doctrine defense and other Policy exclusions.

## I. The Policy

The Court must "apply Texas law as interpreted by Texas state courts." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011) (quoting *Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). Under Texas law, "insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). The Court must interpret the policy to discern the intention of the parties as it is expressed in the policy. *Id*. Whether a contract is ambiguous is also a question of law. *Id*. (citing *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998)). An ambiguity is not present simply because the parties advance conflicting interpretations but exists "only if the contractual language is susceptible to two or more reasonable interpretations." *Id*. (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). "Effectuating the parties' expressed intent is [the Court's] primary concern." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). "No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions." *Id*. A policy's terms should be given their plain meaning, without inserting additional provisions in the contract. *Id*.

"Under Texas law, an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *Gilbane*, 664 F.3d at 594 (citing *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). The duties to defend and indemnify are

---

Court assumes that the Submitted Matters were briefed as separate claims to invoke the Policy's $500,000 Per Claim Retention Provision. The Court, however, does not need to rule on this issue.

8

distinct, and one may exist without the other. *Id.*; *see also Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253–54 (5th Cir. 2011). An insurer's duty to defend is determined by the application of the "eight-corners rule." *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). "The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant." *Id.* (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). "[T]he duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *Colony*, 647 F.3d at 253 (citing *GuideOne*, 197 S.W.3d at 308). All doubts regarding the duty to defend are resolved in favor of the duty, and the pleadings are construed liberally. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). If a complaint potentially includes a covered claim, the insurer must defend the entire suit. *Id.* (citation omitted).

In determining whether an insurer has a duty to defend, the policyholder "bears the initial burden of showing that the claim [in the underlying action] is potentially within the insurance policy's scope of coverage." *Harken Expl Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citation omitted). "However, it is the insurer that carries the burden of establishing that 'the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule.'" *Regency Title Company, LLC v. Westchester Fire Ins.*, No. 4:11–cv–390, 2013 WL 6054820, at *4 (E.D. Tex. Nov. 15, 2013) (quoting *Northfield Ins.*, 363 F.3d at 528). In addition, "[e]xclusions [in the insurance policy] are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008). An

9

exclusion is ambiguous only if it is clearly susceptible to multiple reasonable interpretations. *Regency Title Co*, 2013 WL 6054820, at *4 (citing *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923 (N.D. Tex. 2009)). "[The] rules favoring the insured . . . are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation, the [the rules favoring the insured] do not apply." *Id.* (citing *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir.1998)). "Courts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even though the insured may suffer an apparent harsh result as a consequence." *Ohio Cas. Group of Ins. Companies v. Chavez*, 942 S.W.2d 654, 658 (Tex. App.–Houston [14th Dist.] 1997, writ denied). "Furthermore, if a policy provision is susceptible to only one reasonable interpretation, the court is obligated to give the words their 'plain meaning' even if this means coverage is denied." *Regency Title Co.*, 2013 WL 6054820, at *4 (citing *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 744–45 (5th Cir. 2011)).

"There are two traditional types of insurance policies: occurrence policies and claims-made policies." *Munsch Hardt Kopf & Harr P.C. v. Executive Risk Specialty Ins. Co.*, No. 3:06–cv–01099, 2007 WL 708851, at *3 (N.D. Tex. Mar. 8, 2007) (citing *Matador Petrochemical Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658–59 (5th Cir. 1999)). "Coverage under an occurrence policy is based on the triggering event." *Id*. "However, under a claims-made policy, notice to the insurer is the triggering event and is a condition precedent to coverage." *Id*. "The notice provisions of such policies are therefore strictly construed; otherwise, the insured would receive coverage that was not bargained for." *Id.*; *see also Komatsu v. U.S. Fire Ins. Co.*, 806 S.W.2d 603, 607 (Tex. App.—Fort Worth 1991, writ denied).

Conifer has shown, and QBE does not dispute, that the Submitted Matters are potentially within the coverage of the Policy. To avoid its duty to defend, QBE has the burden to show that the plain language of one or more of the policy's exclusions bar coverage. QBE maintains that the Submitted Matters arise out of the Master Agreement and are precluded from coverage under the Policy's Contract Exclusion. Conifer argues that the Contract Exclusion does not apply because the Submitted matters never alleged that it was a party to the Master Agreement, and to the extent that the term "party" is ambiguous, the Court must construe the exclusion in its favor. Conifer also avers that the Submitted Matters allege Wrongful Acts that are not in connection to the Master Agreement, which obligates Conifer to defend all claims. Lastly, Conifer maintains that the exception to the Contract Exclusion applies because the Submitted Matters seek to hold Conifer liable for Wrongful Acts committed before it assumed the Master Agreement.[2]

## II.   Contract Exclusion

The Contract Exclusion precludes coverage of "any liability in connection with any contract, agreement, warranty or guarantee to which an Insured is a party, provided that this Exclusion B shall not apply to Loss to the extent that such Insured would have been liable for such Loss in the absence of such contract, agreement, warranty or guarantee." (Dkt. #10, Ex. 3 at pp.13). Conifer first argues that the Submitted Matters fail to allege that Conifer was a party and, instead, describe Conifer to have assumed the agreement's full duties and obligations through an assignment or transfer. Conifer contends that an "assignee" or "transferee" is legally distinct from a party and the Court must narrowly construe the Contract Exclusion in its favor. QBE argues that

---

[2] Conifer also argues that OBE did not assert the Contract Exclusion as an affirmative defense in its original answer and thereby waived the argument. QBE's original answer, however, has been superseded. On March 23, 2018, Conifer filed an amended complaint (Dkt. #24), and QBE filed its answer to Conifer's amended complaint (Dkt. #31) and raised the Contract Exclusion as an affirmative defense to the Submitted Matters.

11

there is no meaningful difference between someone who assumes all the duties and obligations under a contract and a "party" to the contract. The Court agrees.

Conifer cites *Viacom* and *Chushka* to support its reading of the Contract Exclusion. *See Viacom Int'l, Inc. v. Tandem PNods., Inc.*, 526 F.2d 593, 598 (2nd Cir. 1975); *Chuska Energy Co. v. Mobil Expl. & Producing, Inc.*, 854 F.2d 727 (5th Cir. 1988). These cases are distinguishable and both attempt to ascertain the scope of the rights, duties, and obligations of assignors and assignees in partial assignments. The Second Circuit in *Viacom* determined that an assignor that partially assigned the *value* of its rights in a contract was not thereafter relieved of its contractual obligations. *See Viacom*, 526 F.2d at 598. In *Chuska*, in a breach of assignment dispute, the Fifth Circuit noted that an assignee was not allowed to raise a defense that would require the assignor to prove the legality of a contract in which the assignee had no duties or obligations. *See Chuska*, 854 F.2d at 730. These cases neither hold nor suggest that an assignee is not a party to a contract in which it has duties, obligations, and rights—let alone full duties and obligations. The cases were, however, consistent with a fundamental Texas contract law principle that "an assignee generally stands in the shoes of his assignor." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 574 (Tex. 2001); *see also In re Travelers Property Casualty Company of America*, 485 S.W.3d 921 (Tex.—App. Dallas 2016) (explaining that when an insurance claim is assigned, an assignee is treated legally identical). Conifer does not argue that Dell was not a party to the Master Agreement before the assignment. The Submitted Matters allege that Conifer assumed all duties and obligations under the Master Agreement; regardless of whether the vehicle was an

assignment or transfer, Conifer was undoubtedly a party under its ordinary meaning and under the Policy's Contract Exclusion.[3]

Conifer alternatively argues that the term *party* renders the Contract Exclusion ambiguous. "Whether a contract is ambiguous is [also] a question of law." *Id.* (citing *Kelley-Coppedge,* 980 S.W.2d at 464. Ambiguity is not present simply because the parties advance conflicting interpretations but exists "only if the contractual language is susceptible to two or more reasonable interpretations." *Id.* (*quoting Am. Mfrs. Mut. Ins.*, 124 S.W.3d at157. "Effectuating the parties' expressed intent is [the Court's] primary concern." *Don's Bldg.*, 267 S.W.3d at 23. "Courts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even though the insured may suffer an apparent harsh result as a consequence." *Ohio Cas. Group of Ins. Cos. v. Chavez*, 942 S.W.2d 654, 658 (Tex. App.—Houston [14th Dist.] 1997, writ denied) (citing *Vest v. Gulf Ins. Co.*, 809 S.W.2d 531, 533 (Tex. App.—Dallas, writ denied)). Conifer has not demonstrated that the provision is susceptible to more than one reasonable interpretation and a plain reading of the Contract Exclusion does not present any ambiguity.

Even if the Court determined that the Contract Exclusion was ambiguous, Conifer fails to offer a reasonable, or any, interpretation for the Court to adopt. Conifer only argues that the exclusion requires one to be a party and that it was not. Essentially, Conifer's interpretation is that one who assumes all duties and obligations under of a contract is not a party to the contract. For the reasons stated above, the Court cannot accept this as reasonable.

Conifer next argues that the Submitted Matters contain allegations of Wrongful Acts that that are independent of the Master Agreement. Specifically, gross negligence, unjust enrichment

---

[3] The Court notes that the Submitted Matters interchangeably refer to the transaction as a full assignment, transfer, and assumption. There is no indication that the parties were limited in their duties, obligations, and rights under the Master Agreement.

through the miscalculation of Conifer's incentive fees, and simple negligence because of inadequate training and incompetence. If true, this would require QBE to defend the Submitted Matters en masse. QBE responds that the allegations all concern Conifer's conduct in relation to the Master Agreement and are not separate theories of liability.

The Policy states that "[i]f in any Claim, the Insureds who are afforded coverage for a Claim incur Loss that is covered by this Policy and loss that is not covered by this Policy because such Claim includes both covered and uncovered matters, 100% of Defense Costs incurred by such Insured shall be covered Loss. . . ." (Dkt. #10, Ex. 3 at pp. 8). The Court must focus its inquiry on the alleged facts and not "the asserted legal theories." *See Northfield*, 363 F.3d at 528. The Submitted Matters allege that "Conifer's failures . . . result from Conifer's willful and grossly negligent misconduct in choosing to understaff the Reid project." (Dkt. #16, Ex. 3). As to the allegations of unjust enrichment, Reid states that "as a result of [failing to accurately calculate its Incentive Fees in accordance with the terms of the Master Agreement], Reid overpaid Conifer's Incentive Fees." (Dkt. #16, Ex. 3 at p 29). And finally, the Submitted Matters allege that Conifer did not have a sufficient number of qualified employees and "mismanaged the clinical documentation improvement system (CDI)." (Dkt. #16, Ex. 3 at pp. 22). Conifer's argument here is also unconvincing. The fact that the allegations of simple negligence, gross negligence, and unjust enrichment may or may not be sound in tort does not change the fact that they are based in connection with the Master Agreement. *See Carolina*, 603 F. Supp. 2d at 931 (citing *King*, 171 S.W.3d at 228–29 (holding that breach of fiduciary duty claim fell within contract exclusion because it related to contractual obligations)).

Lastly, Conifer argues the Submitted Matters allege that it failed to meet performance standards between July 2012 and September 2012—before the Master Agreement was assumed.

By this, Conifer contends, the exception to the Contract Exclusion applies to the extent that Reid seeks to hold it liable for loss in the absence of the Master Agreement. This argument confuses the language of the exception. The Policy states that the Contract Exclusion "shall not apply to Loss to the Extent that such Insured would have been liable for such Loss in the absence of such contract, agreement, or warrant or guarantee." (Dkt. #10, Ex. 3 at p. 8). The proper inquiry is whether, taking away the Master Agreement, the Submitted Matters seek to hold Conifer liable for failing to meet performance standards. Failure to meet performance standards is a way in which the Submitted Matters allege that Conifer breached the Master Agreement. It is not a stand-alone theory of liability. Conifer has not shown that without the Master Agreement in place, it would be liable for failing to meet performance standards that it is not obligated to. Conifer's argument speaks to damages and the merits of the allegations.

The Court must interpret the Policy's provisions with respect to the intentions of the parties. Doubts regarding a duty to defend are resolved in favor of the duty; the Court, however, is not inclined to create doubt where none exists. The Policy's Contract Exclusion limits QBE's duty to defend claims that are made in connection to a contract or an agreement. It is clear from the eight-corners that the Submitted Matters arise solely in connection with the Master Agreement.

**Plaintiffs' Objections to Defendant's Summary Judgment Evidence**

Conifer moves to strike Exhibit C to QBE's Supplemental Motion for Summary Judgment (Dkt. #17) (the "September 2013 Letter") arguing that it is extrinsic evidence not within the eight-corners of the Submitted Matters and Policy. Further, Conifer contends that, even if not extrinsic, the September 2013 Letter is inadmissible as irrelevant under the Federal Rules of Evidence. *See* FED. R. EVID. 401; 402. QBE responds that the September 2013 Letter is a "Claim" under the Policy and goes to the threshold issue of coverage, thus not subject to the eight-corners rule.

Further, QBE argues that the Underlying Reid Lawsuit incorporates the September 2013 Letter by reference and, if deemed extrinsic, falls within an exception to the eight-corners rule.

The Court recognizes the very limited application of exceptions to the stringent eight-corners rule. *See GuideOne*, 197 S.W.3d at 308 (acknowledging that "courts have drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim."). As well as the limited case law on whether documents referenced in the underlying claims are deemed to be incorporated by reference and not extrinsic. The present action does not require the Court to engage these issues. The factual allegations in the September 2013 Letter are present on the face of the Submitted Matters as follows:

> 21. On or about April 28, 2011, Reid outsourced its entire revenue cycle management to Dell Marketing, LP ("Dell") pursuant to the 77-page Master Agreement for Revenue Cycle Outsourcing (the "Master Agreement").
> . . . .
> 23. On November 5, 2012, Conifer assumed all of Dell's duties and obligations under the Master Agreement.
> . . . .
> 54. On September 9, 2013, Reid's President and CEO, Craig Kinyon, sent Conifer's president a letter expressing Reid's concerns with Conifer's failure to meet the above-referenced Performance Metrics and Reid's broader concerns that Conifer was failing to perform its contractual obligations, generally.
> 55. In his letter of September 9, 2013, Mr. Kinyon wrote, "The failure to meet [Conifer's] minimum performance standards is likely *the result of Conifer's reduction of staff* and the failure to perform all the base services delegated to Conifer under the Master Agreement." (Emphasis added).

(Dkt. #16, Ex. 3 at pp. 5–6, 14).

Moreover, QBE offered the September 2013 Letter as summary judgment evidence to support its arguments premised on the Related Claims Exclusion and Prior Knowledge Exclusion, which the Court has found futile to discuss. It is unnecessary to, and the Court did not, consider the September 2013 Letter in finding that QBE has no duty to defend the Submitted Matters.

16

Accordingly, Conifer's Motion to Strike Exhibit C to QBE's Motion for Summary Judgment (Dkt. #17) is denied as moot.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion for Summary Judgment (Dkt. #10) is **DENIED**, Defendant's Motion for Summary Judgment and Brief in Support (Dkt. #11) is **GRANTED**, Defendant's Supplemental Motion for Summary Judgment and Brief in Support (Dkt. #16) is **GRANTED**, and Plaintiffs' Motion to Strike Exhibit C to Defendant's Motion for Summary Judgment (Dkt. #17) is **DENIED** as moot. Accordingly, Defendant did not owe a duty to defend as a matter of law. All of Plaintiffs' claims are based on the duty to defend, and as such, all of Plaintiffs' claims fail as a matter of law. Therefore, Plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

SIGNED this 26th day of September, 2018.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE